UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PREMIER POWER MAINTENANCE CORPORATION )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>GEORGE MARKS and P&C PRIME, LLC )<br>)<br>Defendants. ) | CAUSE NO.:1:20-cv-566 |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff, Premier Power Maintenance Corporation ("Premier" or the "Company"), by counsel, and for its Complaint for Damages against Defendants, George Marks and P&C Prime, LLC ("Marks" and "P&C" individually, or collectively "Defendants"), alleges and states as follows:

### Nature of the Action

1. This is an action for injunctive relief and damages relating to trade secrets.

### Parties, Jurisdiction, and Venue

2. Premier is a corporation incorporated under the laws of the State of Indiana and has its principal place of business in Indianapolis, Indiana.

3. Marks worked for Premier in Indiana, does business in Indiana and maintains a residence in Indiana.

4. P&C Prime is an Indiana Limited Liability Company that conducts business in Indiana and maintains its principal place of business in Indiana.

5. Subject-matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1367, as this action arises in part under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836 *et*

*seq.*, and pursuant to 28 U.S.C. § 1367 because all supplemental state law claims arise out of the same case or controversy as the federal claims over which this Court has original jurisdiction.

6. This Court has personal jurisdiction over Marks because he does business in Indiana and because this action arises from Marks' knowing and intentional breach of certain statutory and common law obligations owed to Premier while acting within and causing injury within this State and District.

7. This Court has personal jurisdiction over P&C Prime because it is an Indiana based Limited Liability Company that has its principal place of business in Indiana and in this District. The actions of P&C Prime described in this Complaint occurred in Indiana and in this District.

8. Venue is proper pursuant to 28 U.S.C. § 1391 in that Marks and P&C Prime are subject to personal jurisdiction in the Southern District of Indiana and a substantial part of the events giving rise to the claims occurred in the Southern District of Indiana.

**Facts Common to All Counts**

9. **Premier** has been recognized for 35 years as a leading electrical testing and maintenance company. Based in Indianapolis, the Company prides itself on being extremely versatile and capable of servicing the entire spectrum of its customer's distribution system needs to 765kV, including in areas relating to safety training, engineering, installation, commissioning, preventative maintenance/testing, and repair.

10. One of Premier's key divisions is the Protection and Controls Division ("P&C Division"). The P&C Division is responsible, for among other things, installing, servicing, testing and commissioning of protective devices and relays for electrical utilities – equipment that is vital to the protection of the nation's electrical distribution and transmission system.

11. As part of its business operations, Premier develops and maintains confidential and proprietary information ("Trade Secrets") which includes, without limitation, its intellectual

property; service methodologies; techniques and applications; schematics and technical specifications; processes; data; know-how; improvements; innovations; discoveries; developments; marketing and sales plans; business plans and strategies; costs, pricing and profit margins; customer requirements and other confidential customer information; and confidential personnel data and information.

12. Premier's Trade Secrets have been developed and continuously refined throughout its history. Premier has spent significant financial resources in developing its Trade Secrets, which gives Premier an advantage over its competitors, and it takes reasonable and appropriate measures to maintain the secrecy of its Trade Secrets.

13. Among other things, the measures Premier has implemented to protect its Trade Secrets include maintaining a confidentiality policy and requiring that all employees adhere to its confidentiality policy as a condition of their employment; implementing physical security measures that restrict access to the premises where Premier's Trade Secrets are maintained; limiting access to the information databases where Trade Secret information is stored to authorized personnel, and restricting access to such information with password-protections; deactivating an employee's ability to access Premier's Trade Secrets upon the cessation of their employment; and otherwise limiting the dissemination of Trade Secrets.

14. Premier's Trade Secrets are an important asset to the Company and the substantial investment of time and money by Premier in gathering its Trade Secrets and protecting their secrecy have resulted in Premier being able to serve its customer needs and achieve its business objectives.

15. Premier's Trade Secrets are not known or readily ascertainable through proper means by Premier's competitors. The disclosure of Premier's Trade Secrets to Premier's competitors would erode Premier's competitive advantage in the marketplace.

16. Premier's Trade Secrets are disclosed to employees only on a need-to-know basis and all Premier employees are prohibited from disclosing Trade Secrets without authorization from Premier.

17. Marks was an employee of Premier who began his employment with the Company on or about August 11, 2014.

18. During his employment, Marks held positions of trust and confidence with Premier.

19. Marks was employed by Premier as a Senior P&C Technical Specialist for the Southern Indiana/Louisville Area, and an Operations Manager for the P&C Division. Marks was involved in the creation of the P&C Division from its inception and was in a leadership capacity throughout his tenure. As part of his duties, Marks selected employees for the P&C Division, trained them and supervised them. Additionally, he was involved in the business development process, soliciting customers and providing critical information necessary for the submission of bids and business proposals to customers of Premier. He also provided highly technical services to those customers.

20. Marks was well compensated in his roles as a Senior P&C Technical Specialist for the Southern Indiana/Louisville Area and as an Operations Manager for the P&C Division, earning well into the six figures at the time of his departure.

21. Marks had access to and used Premier's Trade Secrets during his employment with Premier, including when he was a Senior P&C Technical Specialist for the Southern Indiana/Louisville Area and an Operations Manager for the P&C Division.

22. As a condition of his employment, Marks agreed to the terms of Premier's Policy Manual, which included protections for the Company's Trade Secrets.

23. Among other things, Marks expressly agreed that he would not disclose and would protect the Company's Trade Secrets, as well as non-public information entrusted to the Company

by its team members, customers and business partners. He also agreed that he would not discuss the general internal business affairs of the organization, including its "financial information, profitability information, legal documents, pricing information and customer information" with unauthorized individuals.

24. Given his written affirmations that he would never use Premier's Trade Secrets other than for the benefit of Premier, Marks was allowed to develop relationships with Premier's customers.

25. Defendant resigned from Premier and his last pay-date was December 19, 2019.

26. Marks created a separate Indiana Limited Liability Company by the name of P&C Prime, LLC on or about March 13, 2018. Marks was employed as a manager by Premier at the time he formed P&C Prime.

27. According to information on file with the Indiana Secretary of State, Marks is the registered agent and the sole member of P&C Prime.

28. Marks did not disclose the existence of P&C Prime to Premier during his employment with Premier.

29. P&C Prime holds itself out as competing with Premier, and offers services that are comparable to the services provided by Premier, including services provided by Premier's P&C Division.

30. When Marks left Premier, he had Premier's Trade Secrets in his possession, custody and control. He did not return those Trade Secrets to Premier and those Trade Secrets are still in his possession, custody and control.

31. Prior to his separation from Premier, Marks transmitted Premier Trade Secrets to his personal email account, and retained that information after his employment with Premier ended.

The Trade Secrets he emailed to himself included at least one customer contract, pricing information and information showing costs and profit margins.

32. The transmittal of the Trade Secrets to his email account was improper and unauthorized.

33. A preliminary evaluation of Marks' Premier company computer reveals that immediately prior to his departure, he connected multiple electronic storage devices to the computer at which time he accessed numerous confidential and proprietary documents containing Trade Secrets.

34. Following Marks' departure from Premier, he has held himself out as the principal of P&C Prime, which holds itself out as offering services in competition with Premier.

35. Following Marks' departure from Premier, he solicited several employees to break their employment relationships with Premier to go work for P&C Prime. For example, Marks solicited Mike Carrico and Caleb Crawford to work for P&C Prime and, subject to a reasonable investigation and opportunity for discovery, has been or is about to solicit Travis Crawford to work for P&C Prime. These individuals comprised a significant amount of the experienced employees in Premier's P&C Division, and Mike Carrico's and Caleb Crawford's departure has effectively gutted the Southern Indiana/Louisville Area of the P&C Division.

36. Subject to a reasonable opportunity for investigation and discovery, it is inevitable that, in light of his access to Premier's Trade Secrets, his role with P&C Prime, and by holding himself as offering services that compete with Premier, Marks will use or disclose Premier's Trade Secrets.

37. Premier has been damaged as a result of Defendants' wrongful actions.

38. Premier has suffered, or will suffer, irreparable harm as a result of Defendants' wrongful actions.

39. Premier has invested significant money in attorneys' fees to investigate and seek to stop Defendants' illegal conduct.

40. Premier lacks an adequate remedy at law. Premier's loss of Trade Secrets, and the harm caused by Defendants' wrongfully competitive actions, as well as loss of good will as a result of Defendants' wrongful conduct are impossible to determine and of a character that cannot be remedied merely by money damages.

41. Defendants' actions are intentional, willful, and malicious and/or in bad faith.

## Count I
## Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*

42. Premier repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

43. As described above, Premier has developed and maintained substantial Trade Secrets.

44. Premier's Trade Secrets are used or intended for use in interstate commerce.

45. Premier derives economic value from the Trade Secrets not being generally known, or readily ascertainable through proper means by other persons who could obtain economic value from their disclosure or use.

46. Premier undertakes reasonable efforts to maintain the secrecy of its Trade Secrets.

47. Throughout his employment, Marks had access to and utilized Premier's Trade Secrets.

48. Under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et. seq.* ("DTSA"), Marks has a duty not to misappropriate information he knows or has reason to know constitutes trade secret information.

49. Marks knew or had reason to know that the Trade Secrets he took prior to his departure from Premier comprised or included trade secret information in accordance with the DTSA.

50. Marks misappropriated Premier's Trade Secrets by, among other things, transmitting them to his private email account prior to his departure from Premier, failing to return the Trade Secrets after his employment with Premier ended, and retaining that information while working for P&C Prime and after his employment with Premier ended.

51. Marks further misappropriated Premier's Trade Secrets by accessing them from his Company issued computer prior to his departure from Premier, failing to return the Trade Secrets after his employment with Premier ended, and retaining that information while working for P&C Prime and after his employment with Premier ended.

52. Marks misappropriated Premier's Trade Secrets in the course and scope of his employment relationship with, and subject to a reasonable opportunity for investigation and discovery at the direction of, P&C Prime.

53. Subject to a reasonable opportunity for investigation and discovery, Marks' and P&C Prime's conduct was willful, malicious and/or in bad faith.

54. Premier has been damaged by Marks' and P&C Prime's misappropriation of Trade Secrets.

55. Premier requests that Marks and P&C Prime be ordered to return all Trade Secrets remaining their possession; that Marks and P&C Prime be enjoined from using any Trade Secrets in the future, including by using those Trade Secrets in competition with Premier; that Marks and P&C Prime pay to Premier all actual and consequential damages resulting from their wrongful conduct; that P&C Prime pay to Premier all profits made from the use of Trade Secrets; and that Marks and P&C Prime pay exemplary damages to Premier, as well as Premier's attorneys' fees and costs.

**Count II**
**Indiana Uniform Trade Secrets Act, Ind. Code Ann. § 24-2-3-1 *et seq.***

56. Premier repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

57. As described above, Premier has developed and maintained substantial Trade Secrets.

58. Premier derives economic value from the Trade Secrets not being generally known, or readily ascertainable through proper means by other persons who could obtain economic value from their disclosure or use.

59. Premier undertakes reasonable efforts to maintain the secrecy of its Trade Secrets.

60. Throughout his employment, Marks had access to and utilized Premier's Trade Secrets.

61. Under the Indiana Uniform Trade Secrets Act, I.C. § 24-2-3-1, *et. seq.* ("IUTSA"), Marks has a duty not to misappropriate information he knows or has reason to know constitutes trade secret information.

62. Marks knew or had reason to know that the Trade Secrets he took prior to his departure from Premier comprised or included trade secret information in accordance with the IUTSA.

63. Marks misappropriated Premier's Trade Secrets by, among other things, transmitting them to his private email account prior to his departure from Premier, failing to return the Trade Secrets after his employment with Premier ended, and retaining that information while working for P&C Prime and after his employment with Premier ended.

64. Marks further misappropriated Premier's Trade Secrets by accessing them from his Company issued computer prior to his departure from Premier, failing to return the Trade Secrets

after his employment with Premier ended, and retaining that information while working for P&C Prime and after his employment with Premier ended.

65. Marks misappropriated Premier's Trade Secrets in the course and scope of his employment relationship with, and subject to a reasonable opportunity for investigation and discovery at the direction of, P&C Prime.

66. Subject to a reasonable opportunity for investigation and discovery, Marks' and P&C Prime's conduct was willful, malicious and/or in bad faith.

67. Premier has been damaged by Marks' and P&C Prime's misappropriation of Trade Secrets.

68. Premier requests that Marks and P&C Prime be ordered to return all Trade Secrets remaining their possession; that Marks and P&C Prime be enjoined from using any Trade Secrets in the future, including by using those Trade Secrets in competition with Premier; that Marks and P&C Prime pay to Premier all actual and consequential damages resulting from their wrongful conduct; that P&C Prime pay to Premier all profits made from the use of Trade Secrets; and that Marks and P&C Prime pay exemplary damages to Premier, as well as Premier's attorneys' fees and costs.

## Count III
### Breach Of Fiduciary Duty Of Loyalty

69. Premier repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

70. Marks owed Premier, as its employee and manager, a fiduciary duty of loyalty.

71. Marks also had an obligation pursuant to the Policy Manual not to, while employed by the Company, engage in any outside employment without the approval of the Company, work for Premier's competitors or customers, or use the confidential or proprietary information of Premier or its customers in the course of any outside employment.

72. Marks did not seek or obtain approval from the Company to work at P&C Prime.

73. While still employed and paid by Premier, Marks breached his duty of loyalty by undertaking activities for the benefit of P&C Prime, which holds itself out as competing with Premier.

74. Marks further breached his duty of loyalty by improperly recruiting Premier employees to follow him to P&C Prime, while still being employed and paid by Premier.

75. Premier has been damaged as a result of Marks' improper conduct.

## Count IV
## Raiding/Unfair Competition

76. Premier repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

77. Defendants targeted and raided a substantial percentage of the experienced workforce in Premier's P&C Division, particularly within the Southern Indiana/Louisville Area.

78. Subject to a reasonable opportunity for investigation and discovery, Defendants utilized misappropriated Trade Secrets regarding employee performance, compensation and job satisfaction to facilitate this raiding effort.

79. Subject to a reasonable opportunity for investigation and discovery, Marks – on behalf of, and for the benefit of, P&C Prime – recruited Premier P&C Division staff while he was still employed by Premier in violation of his legal obligations and fiduciary duties to Premier. P&C Prime induced and benefited from these breaches.

80. P&C Prime's and Marks' targeted raid of Premier's P&C Division staff was carried out with the purpose of crippling the Southern Indiana/Louisville Area of Premier's P&C Division.

81. The targeted raid was carried out within a short period of time which was designed to and caused harm and disruption to Premier.

82. P&C Prime succeeded in its unlawful raiding that involved independent unlawful conduct outlined herein, as a substantial percentage of Premier's experienced P&C Division staff from the Southern Indiana/Louisville Area left Premier.

83. Premier has been damaged by P&C Prime's illegal raiding/unfair competition.

### Relief Requested

WHEREFORE, based on the foregoing allegations and Counts set forth above, Plaintiff, Premier Power Maintenance Corporation, prays for judgment against Defendants George Marks and P&C Prime and requests the following relief:

(1) That the Court issue a preliminary and permanent injunction requiring that Defendants return all misappropriated Premier property, including its Trade Secrets, prohibiting Defendants from further misappropriating, using or possessing Premier's Trade Secrets, prohibiting Defendants from utilizing the Trade Secrets to compete against Premier and prohibiting Defendants from engaging in unfair competition by improperly contacting/soliciting Premier employees in an illegal effort to raid Premier's workforce;

(2) That Premier be awarded actual, compensatory, consequential, and exemplary damages in an amount to be determined at trial;

(3) That Marks return all of the salary/benefits he received during the period in which he breached his fiduciary duty of loyalty;

(4) That Premier be awarded punitive damages;

(5) That Premier be awarded attorneys' fees and costs associated with bringing and prosecuting this action;

(6) That Premier be awarded prejudgment interest; and

(7) That Premier be awarded such other and further relief as this Court deems just and proper.

Respectfully submitted,

*s/ Richard P. Winegardner*
Terry W. Dawson
Richard P. Winegardner
Hannesson I. Murphy
**BARNES & THORNBURG LLP**
11 South Meridian Street
Indianapolis, Indiana  46204
Telephone: (317) 236-1313
Facsimile: (317) 231-7433
E-Mail: terry.dawson@btlaw.com
rwinegardner@btlaw.com
hmurphy@btlaw.com

Attorneys for Premier Power Maintenance Corporation